# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re<br><br>**JAMES J. TOFANI,**<br><br>                    **Debtor** | Chapter 7<br>Case No. 05-20772-RS |

### MEMORANDUM OF DECISION

Before the Court is the Debtor's motion to avoid the judicial lien of the Framingham Municipal Federal Credit Union on a property that is the subject of the Debtor's claim of a Massachusetts homestead exemption.  The Credit Union opposes the motion, contending that the Debtor's homestead estate was not validly acquired, hence cannot be the subject of a claim of exemption, and therefore cannot be the basis of an avoidance of its lien.  The Debtor denies the Credit Union's contentions as time-barred and on the merits.

At issue is whether the Credit Union's opposition to the Debtor's lien avoidance motion fails (a) because the exemption claim objection on which it is based was made more than thirty days after the conclusion of the Section 341 meeting in this case and (b) even if not time-barred, because the homestead estate was validly acquired, hence the homestead estate exemption claim is properly allowed and the judicial lien is properly avoided as impairing that exemption.[1]

For the reasons set forth below, I grant the Debtor's motion, allow the Debtor's homestead exemption claim and avoid the Credit Union's judicial lien as impairing that exemption.

### Procedural Status

The Debtor commenced this case on October 11, 2005 ("Petition Date").  On October 21,

---

[1] See 11 U.S.C. sec. 522(f) (a debtor may avoid the fixing of a lien to the extent it impairs an exemption).

2005, the customary notice was sent to creditors regarding the filing of the case, the time and place of the meeting of creditors under Section 341 of the Bankruptcy Code, and the deadlines for various matters including objections to exemption claims.[2] The section 341 meeting was conducted and concluded on November 15, 2005.[3] The Debtor's discharge was issued on April 26, 2006.

On December 20, 2005, the Debtor filed his motion to avoid the prepetition judicial lien of the Credit Union ("Motion"). On January 17, 2006, the Credit Union filed its opposition to the Motion ("Opposition"). The Opposition was filed before the response deadline for the Motion but more than thirty (in fact, *sixty-three*) days after the conclusion of the Section 341 meeting.

I conducted two hearings on the Motion, a non-evidentiary hearing on February 28, 2006 and an evidentiary hearing on April 10, 2006, thereafter taking the matter under advisement. Having considered the pretrial and posttrial submissions, the trial affidavits, testimony and exhibits, the arguments of counsel and applicable law, I now render my decision.

## Background

The material facts relevant to this matter are undisputed.

The Debtor and his wife married in 1988 and divorced in 2003.[4] They have three children. On March 29, 2000, they acquired as tenants by the entirety real property in Sutton,

---

[2] See Rule 4003(b) of the Federal Rules of Bankruptcy Procedure requiring exemption claim objections to be filed within thirty days after conclusion of the Section 341 meeting.

[3] There is some confusion regarding this date. The meeting was scheduled for November 15, 2005; the Chapter 7 trustee's notice of its occurrence was docketed on November 18, 2005. The difference is not material to the outcome herein; however, I find that the meeting was conducted and concluded on November 15, 2005, as scheduled.

[4] The divorce became final in March 2004.

2

Massachusetts, which they and their children thereafter occupied as their principal residence ("Residence"). In 2001, they separated. The Debtor has since resided at other locations, including at his parents' home. In their divorce-related separation agreement, he and his ex-wife agreed to the following (among other things): (a) they would live apart; (b) they would continue as co-owners of the Residence; (c) the ex-wife would have the sole use and occupancy of the Residence; (d) the ex-wife could acquire the Debtor's interest in the Residence at any time before the high school graduation of the youngest child; (e) absent such acquisition by the ex-wife, they would place the Residence for sale; (f) during her occupancy, the ex-wife would pay the mortgage and normal operating expenses, and they would equally share maintenance and improvement costs; (g) the Debtor would pay the equity line secured by the Residence; and (h) upon acquisition or sale, the net equity or sale proceeds would be equally shared.

The separation agreement does not preclude the *Debtor's* acquisition of the *ex-wife's interest* in the Residence and, but for the ex-wife's pregraduation acquisition right, appears to contemplate the Debtor's acquisition as one possible outcome to their co-ownership. The separation agreement also provides for other typical divorce-related accommodations: joint legal custody of the children (with the ex-wife having sole physical custody), co-parenting guidelines, visitation rights, life, health and medical insurance, and the like. As of the Petition Date, their youngest child had not yet graduated from high school, the ex-wife had not acquired the Debtor's interest in the Residence, and the Residence had not been sold.

On September 27, 2005, fifteen days before the Petition Date, the Debtor signed and recorded with the requisite registry a declaration of homestead as to the Residence under the

Massachusetts homestead statute.[5] In his declaration, he stated that he owned the Residence and intended to occupy it as his principal residence.

The Debtor's case commencement papers herein include the following: (a) Schedule A - Real Property in which he lists the Residence as co-owned with his ex-wife and having a $360,000 value;[6] (b) Schedule C - Property Claimed as Exempt in which he lists a $500,000 Massachusetts homestead exemption claim in the Residence; and (c) Schedule D - Creditors Holding Secured Claims in which he lists the Credit Union as a "judgment levy" creditor in the amount of $89,574. In the latter schedule, he also lists a first mortgage claim in favor of Mor Equity, Inc. in the amount of $180,000 and a state tax lien in the amount of $11,645.

In his pretrial deposition and trial testimony, the Debtor acknowledged that he has not lived at the Residence since 2001 and was not living there when he recorded the Massachusetts homestead declaration. He claims, however, that he has maintained a consistent connection with the Residence, visiting there regularly to attend to and care for his children. He also claims that he has always intended to resume occupancy at the Residence by acquiring his ex-wife's interest (a) once he has completed his child support obligations, which he calculates as ending in 2012, or (b) before then, with her consent. He concedes that he has no specific present plan or indeed the present resources to effectuate this acquisition of ownership and resumption of occupancy. Yet he maintains that he had this intention when he recorded his homestead declaration in 2005.

The Credit Union acknowledges that it had notice of the Debtor's bankruptcy case,

---

[5]Mass.Gen.Laws. c. 188 sec.1 et seq.

[6]Subsequently, the Debtor submitted evidence of a $379,900 value. This evidence was not rebutted and I find that, for the purposes of this matter, the Residence has a value of $379,900.

including the Section 341 meeting date of November 15, 2005 as well as Schedules A, C and D as above noted. The Credit Union also concedes that it did not file an objection to the exemption claim within thirty days after the conclusion of the Section 341 meeting.

### Positions of the Parties

The Credit Union argues as follows: (a) the homestead declaration is invalid because the Debtor neither occupied nor intended to occupy the Residence when he recorded it; (b) since the homestead declaration is invalid, the exemption claim on which it is based is not allowable; (c) since the exemption claim is not allowable, the Motion on which it is based cannot be granted; (d) although it had notice of the bankruptcy case, the schedules, the Section 341 meeting date and the deadline for exemption objections, the Credit Union had no notice of the Debtor's intended employment of Section 522(f) to avoid its lien, and thus no reason to object to the homestead exemption claim, until the Debtor filed the Motion; (e) the thirty day deadline for exemption claim objections does not apply to lien creditors, hence the Credit Union's opposition to the Motion (and its underlying objection to the exemption claim) are timely filed; (f) the filing of the Motion constitutes an amendment to Schedule C such that the thirty day objection deadline was extended to the deadline for response to the Motion, which response deadline it met; and (g) the Court should employ Section 105 to prevent the unjust enrichment that would result from avoidance of the Credit Union's lien based on the thirty day objection deadline.

In rebuttal, the Debtor argues as follows: (a) the homestead estate was validly acquired because when he recorded his declaration he co-owned the Residence and intended to occupy it as his principal residence at some future date, likely tied to the completion of his child support obligations (if not before); (b) the Credit Union had the customary notice of the case and its

attendant deadlines including the deadline for an exemption claim objection; (c) the thirty day objection deadline applies to all creditors including the Credit Union in respect of its judicial lien; (d) since the Credit Union failed to object within the thirty day deadline, its exemption claim objection is time-barred; and (e) even if not time-barred, given the uncontested mortgage, lien, exemption and valuation amounts, the Credit Union's judicial lien must be avoided as impairing the Debtor's validly acquired homestead exemption.

## Discussion

### I

### Timeliness of Objection

The threshold issue before the Court is whether the Credit Union's exemption claim objection is time-barred. If so, then that objection cannot form the basis of the Opposition and the Motion is properly granted.

*A.*     *The Taylor Analysis*

In *Taylor v. Freeland and Kronz*, 503 U.S. 639 (1992), the U. S. Supreme Court held that a Chapter 7 trustee, as a party in interest, could not contest the validity of a claimed exemption after the Rule 4003(b) 30-day objection period had expired, even though the debtor had no colorable basis for claiming the exemption. In *Taylor,* the exemption had been timely claimed, the trustee knew of it, considered it and elected not to object. Ultimately, the claim produced significant proceeds, only a portion of which could have been properly exempted. The trustee then objected, well after the 30-day objection deadline. The Court overruled the objection as time-barred notwithstanding the otherwise invalidity of the bulk of the claim. As Justice Thomas observed, perhaps in recognition of the at least arguable unfairness of the

outcome, "Deadlines may lead to unwelcome results, but they prompt parties to act and produce finality." *Taylor*, 503 U.S. at 642.

The predicates for the Court's decision in *Taylor* are (a) Section 522(l), which requires a debtor to file a list of property claimed as exempt and recognizes such claims unless "a party in interest objects," 11 U.S.C. sec. 522(l); and (b) Rule 4003(b), which permits a "party in interest" to object to exemption claims within thirty days after the conclusion of the Section 341 meeting (or any extension of that thirty day deadline requested before its expiration). FED. R. BANKR. P. 4003(b).

All the elements of *Taylor* are present in this matter: (a) the Debtor timely filed the required schedules including a list of property he claimed as exempt; (b) creditors (including the Credit Union) were notified of the deadline for objections to that list; and (c) the Credit Union failed to make a timely objection to the exemption claim. The distinguishing factor between *Taylor* and this matter is its procedural setting: there, the matter arose wholly in the exemption claim objection process; here, the matter arose in the lien avoidance opposition process. Does that make a difference?

B.   *The Schoonover Approach*

The Seventh Circuit in *In re Schoonover,* 331 F.3d 575 (7th Cir. 2003) thought so. In that case, the debtor moved to avoid a prepetition judicial lien on funds he claimed as exempt (apparently speciously), contending that the opposition to his motion must be denied because it was premised on an objection to his exemption claim, an objection filed outside the thirty day deadline of Rule 4003(b).[7] The Court rejected that contention, opining that the thirty day rule

---

[7] As distinct from the opposition to the motion, which was apparently timely filed.

applies only to general unsecured creditors not lien creditors and that lien avoidance oppositions are governed by Rule 4003(d) even if based on an exemption claim objection. The Court reasoned that Rule 4003(d) places lien avoidance motions relating to exempt property among the class of contested matters, thus cloaking them with the procedural panoply attendant upon such matters (including the fixing of a response date without regard to the thirty day deadline of Rule 4003(b)). The Circuit grounded its analysis in the precept that "[A] creditor's right to foreclose on [a lien] survives or passes through the bankruptcy," citing *Johnson v. Home State Bank*, 501 U.S.78, 83 (1991).[8]

I am not persuaded by *Schoonover* for several reasons. *First*, mustering lien creditors out of the class of "party in interest" established under Section 522(l) and Rule 4003(b) seems somewhat arbitrary. There is no exclusion in either the statute or the rule for lien creditors and no textual basis to introduce one.[9]

*Second, Schoonover* seems not to consider the discrete nature and function of Rule 4003(b) and Rule 4003(d). The former rule regulates what *parties in interest* must do with respect to objections to exemptions listed in a debtor's schedules; the latter rule regulates what *the debtor* must do with respect to lien avoidance challenges concerning exempt property.[10] These rules have different and independent purposes. To declare the former rule inoperative as to

---

[8]In *Johnson*, the Court held that a lien survived as an enforceable claim in a Chapter 13 case despite the discharge of the underlying debt in a prior Chapter 7 case.

[9]"Party in interest" is not defined in the Bankruptcy Code. I adopt the customary definition of a party interest as a person entitled by law to enforce a substantive right. See Black's Law Dictionary (8th ed. 2004). I find that the Credit Union is a party in interest under Section 522(l) and Rule 4003(b).

[10]Wholly apart from any exemption claim issues, Rule 4003(d) provides the procedural framework for implementing the measurement of exemption impairment under Section 522(f).

lien creditors and the latter rule applicable to their exemption objections limits the former and expands the latter. While that exercise may be occasioned by an elevated sense of fairness and the goal of avoiding "unwelcome" outcomes, it does not seem warranted given the plain meaning of the rules as well as the logic of their formulation.

*Third, Schoonover* asks *Johnson* to do too much. *Johnson* clearly establishes that a lien claim survives the discharge of the underlying debt in a prior bankruptcy case. However, it does not stand for the proposition that lien creditors can ignore plain and unambiguous restrictions sought to be imposed on their lien status as a consequence of an exemption claim. After all, a homestead exemption claim by its nature constitutes a challenge to a lien creditor and by its assertion in a debtor's schedules implicates the protections for such claim under Section 522(f). A lien creditor has no unfettered right to stand aloof from a bankruptcy case and beyond the regulation of applicable statutes and rules. *Johnson* does not mandate such special status, and I see no reason to create one in matters of exemption objections.

*Fourth*, unlike *Schoonover*, my reading of the implicated statutes and rules leaves intact their scope and meaning: exemption claim objections are governed by Section 522(l) and Rule 4003(b) while lien avoidance challenges are governed by Section 522(f) and Rule 4003(d). I prefer to leave this textual framework undisturbed.[11]

Here, the Credit Union had ample notice that the Debtor sought, in his bankruptcy case, to preserve for his family the homestead exemption protections afforded under Massachusetts law. That could only be done, of course, at the Credit Union's expense. That notice is all that is

---

[11]The best case for the *Schoonover* approach is set forth in Judge Feeney's recent decision, *In re Tinker*, 355 B.R. 380 (Bankr. Mass. 2006), typically thorough, lucid and well-reasoned. For the reasons stated above, however, I respectfully decline to follow it.

required to alert a lien creditor that it may be dislodged from its otherwise comfortable perch. If the lien creditor elects to disregard that warning, it does so at its peril, as did the Credit Union here.

C.     *Other Rationales*

The Credit Union's other arguments are not persuasive. The Motion does not amend the exemption claim (thereby warranting an extension of the unmet thirty day deadline). The Motion merely seeks to implement the restriction foreshadowed by that claim.

Nor do I consider this an appropriate moment to unsheathe the powers of Section 105. I do not observe any order, process or judgment necessary or appropriate to carry out the provisions of Section 522 (or any other section of the Code) in the circumstances of this case. The Code and its attendant rules are clear enough and potent enough to illuminate and to resolve this matter, even if the outcome is unwelcome.

Accordingly, I find that the Credit Union's objection to the Debtor's homestead exemption claim is time-barred.

## II

## The Merits

Having resolved the threshold issue of the timeliness of the objection, I turn to the merits of the exemption acquisition to afford completeness to the Court's consideration of this matter, which has been fully tried.

A.     *The Homestead Exemption: Source and Acquisition*

I have elsewhere addressed the operation and construction of the Massachusetts homestead statute. See *In re Walsh,* 2007 WL 114026 (Bankr. D. Mass. 2007); *In re Melito,* 2007

WL 30336 (Bankr. D. Mass. 2007); *In re Vasques*, 337 B.R. 255 (Bankr. D. Mass. 2006).  In summary, (a) a Massachusetts homestead estate as to a principal residence may be acquired, as here claimed, by the recordation of the statutory declaration in the requisite registry; (b) such declaration requires an affirmance of ownership and either occupancy or an intent to occupy; (c) the homestead protections extend to the declarant's family, to the subject property, and to the equity in the subject property up to $500,000; (d) exemptions (including those based upon a homestead estate) must be liberally construed in favor of the declarant; and (e) the party objecting to an exemption claim bears the burden of proof by a preponderance of the evidence.

The homestead estate involves three components: ownership; occupancy; intent to occupy. The Credit Union concedes that the Debtor is (and was at the time of the homestead declaration) a co-owner of the Residence.  The Debtor concedes that he does not now (and did not at the time of the homestead declaration) occupy the Residence.  The dispute, and the resolution of this matter, reduce to the question of intent.  If the Debtor neither occupied nor intended to occupy the Residence at the time of his declaration, then the homestead was not acquired validly and could not be the subject of an exemption claim in his bankruptcy case, and the Motion fails.  If the Debtor did intend to occupy the Residence at the time of his declaration, then the homestead was acquired validly and is the proper subject of an exemption claim in his bankruptcy case, and the Motion succeeds.[12]

---

[12] In the Motion, the Debtor correctly employs the impairment and avoidance formula under Section 522(f) and, in view of my decision in this matter and given the uncontested mortgage, lien, exemption and valuation numbers, is entitled to complete avoidance of the Credit Union's judicial lien.

B.     *The Debtor's Intent To Occupy*

As in other areas of the law, intent, though elusive, may nonetheless be discerned in and, established by, words and actions divined for their true meaning rather than their facial form. See *Melito,* supra.

Here, the considerations that tend to support the Debtor are these: (a) he co-owns the Residence, hence has a direct and legally cognizable interest in it, unchanged since its acquisition with the sole exception of the alteration of the form of ownership from tenancy by the entirety to tenancy in common occasioned by his divorce; (b) he resided in the Residence while married and discontinued his occupancy only upon the failure of his marriage; (c) he spends meaningful time at the Residence not as an occupant but as caretaker and parent to his children; (d) his children have lived at the Residence since their parents acquired it and continue to do so; (e) though his ex-wife has a buy-out option, she has not yet exercised it, it expires if not exercised by the high school graduation of their youngest child and the Debtor may buy out her interest, either before or after the expiration of her option; (f) he is obligated to share equally in the maintenance and improvement costs at the Residence; and (g) he has testified consistently and credibly that, in making the homestead declaration, he intended to re-occupy the Residence at a future date and in any case sought to provide to his children the homestead protections available as to the Residence under the statute.

The considerations that tend to support the Credit Union are these: (a) the Debtor has not occupied the Residence for six years and had not occupied it for four years when he made his homestead declaration; (b) he did not have the resources to buy out his ex-wife when he made his declaration and does not have them at present; and (c) if his ex-wife buys out his interest, his

12

ownership in the Residence will terminate together with his homestead estate, an outcome more likely than *his* buyout of *her* interest.

Not surprisingly, the statute does not provide hard and fast rules on the issue of intent to occupy: how long after the declaration of an intent to occupy must actual occupancy occur; what must a declarant do to effectuate that intent (other than actually occupy); what showing, if any, must a declarant make to evidence his ability, financial and otherwise, to occupy.[13]

Based upon all of the circumstances attendant upon this dispute, I find that the Debtor did have the requisite intent to occupy the Residence when he made his declaration. I find this intent reflected in his strong and continuing connection to the Residence arising from his co-ownership, his maintenance and improvement obligations, his close relationship to his children including regular visitations with them at the Residence, and *their* uninterrupted occupancy of the Residence. While I decline to set a fixed formula for the "near future" guideline, here the passage of seventeen months from homestead declaration to the present without actual occupancy does not itself render the intent undemonstrated or invalid. Moreover, to the extent that such an intent to occupy must be reasonably founded upon the Debtor's ability, financial and otherwise, to do so within a reasonable time, the circumstances at declaration are the same as at present: his ex-wife has not exercised her buyout, he may acquire her interest and there is substantial equity in the Residence to provide a financial base for such acquisition.

Accordingly, I find that the Debtor acquired a valid Massachusetts homestead estate prior

---

[13] See *In re Roberts*, 280 B.R. 540 (Bankr. D. Mass. 2006) in which Judge Hillman cites cases that require intent be linked to actual occupancy in the not too distant future and concludes that "a debtor must demonstrate that the future occupancy is in the near future and is capable of measurement given whatever steps a debtor must take to achieve occupancy. . ." *Roberts*, 280 B.R. at 546. This approach is both specific and flexible, hence a helpful guide.

to his bankruptcy case, that he has properly claimed an exemption in respect of this homestead estate, and that, since the invalidity of his acquisition of that estate is the sole basis for the Opposition, the Motion should be granted.

### Conclusion

The Debtor's claim of a homestead exemption under Massachusetts law pursuant to Section 522 was timely filed and untimely objected to. Even if timely objected to, the exemption claim is allowed because the Debtor's homestead estate was properly acquired prepetition in accordance with Massachusetts law and properly claimed in his bankruptcy case in accordance with the Code. The impairment of that exemption has been correctly calculated in accordance with Section 522(f) and requires full avoidance of the Credit Union's judicial lien. Accordingly, the Motion is granted and the judgment lien of the Credit Union is hereby avoided in its entirety.

A separate order will issue.

Date: March 27, 2007

_Robert Somma_
Robert Somma
United States Bankruptcy Judge

cc: George R. Desmond, Counsel to Debtor
James J. Tofani
Timothy J. McCarthy, Counsel to Framingham Municipal Federal Credit Union
Joseph Braunstein, Chapter 7 Trustee
John Fitzgerald, Office of the U.S. Trustee